UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

In Re:                                                  Case No. 10-bk-10515-
                                                        LMK

DAVIS HERITAGE GP HOLDINGS, LLC,                        Chapter 11

        Debtor.

_____/

**TRIAL MEMORANDUM OF CREDITOR, INERVEST CAPITAL LTD.,
IN SUPPORT OF ITS MOTIONS FOR RELIEF FROM STAY,
TO DISMISS AND TO ABSTAIN**

COMES NOW Creditor, INERVEST CAPITAL, LTD. ("Inervest"), by and through its attorneys, and files its Trial Memorandum in support of its Motions for Relief from Stay, to Dismiss and to Abstain, and Memorandum of Law, and alleges:

There are no undisputed material facts and this Court can rule, as a matter of law, that it should abstain from hearing this case, that this case should be dismissed, or that Inervest is entititled to relief from the automatic stay.

This case is not a legitimate attempt to successfully reorganize a business. Rather, this case is only a mechanism to protect insiders and their assets. Here, insiders of the Debtor seek to limit Inervest's recovery in order to donate assets subject to Inervest's judgment lien to two other recourse creditors – SunTrust and Wells Fargo – to protect the insiders' money and property from those creditors. This scheme amounts to a kind of reverse marshaling – that is, the insiders seek to divert to recourse creditors the assets now subject to Inervest's lien, even though the other creditors are fully secured by other non-Debtor assets from which they can fully collect. To effect the reverse marshaling, the Debtor is gaming the bankruptcy system by picking and

choosing which portions of the bankruptcy code it wants to apply to which creditors and which assets.

At the conclusion of the first hearing on Inervest's stay relief motion, this Court properly noted that the Debtor seems to want to have it both ways – i.e. for the stay to be in effect as to Inervest, but yet hold the assets outside the reach of the Court.

The evidence will show that Inervest has no guarantors or additional collateral for its debt, and that its recovery is absolutely limited to the value of the various LLCS owned by the Debtor. Inervest is the only direct creditor of this Debtor. Unlike the other two creditors, no other assets are pledged to secure Inervest's claim. The evidence will further show that SunTrust Bank and Wells Fargo have personal guarantys of insiders and/or affiliates of the Debtor, specifically including Stefan Davis, Norita Davis, Earthart LLC, and Davis Heritage, Ltd. The evidence will also show that Wells Fargo and SunTrust have other substantial property pledged to secure the loans and guarantys – including Certificates of Deposit, Money Market Accounts and other real property. Any diversion of assets to Wells Fargo and SunTrust in this case would only benefit the insiders, and would be directly adverse to the interests of Inervest, the only real and legitimate direct creditor of this Debtor. There is no proper purpose for this case.

Even without further evidence, the undisputed facts contained in record evidence in this case are sufficient to permit this Court to rule in Inervest's favor and to dismiss this case or grant Inervest relief from stay. The material undisputed facts already before this Court show that:

(1) the Debtor is a "shell" holding company;

(2) the Debtor has no business to reorganize;

(3) the Debtor's only asset of value is its membership interests in certain LLCs, which in turn apparently own all or a portion of single asset, bankruptcy remote entities;

(4) in substance this is a single asset case;

(5) this case is essentially just a two-party dispute;

(6) the issues involving the other two creditors, to the extent such issues actually exist, are more properly resolved in state court; and

(7) the petition was filed, and the Debtor is proceeding, in bad faith.

## MATERIAL UNDISPUTED FACTS

1.      Inervest holds a final, non-appealable judgment against this Debtor.

2.      The Debtor filed its voluntary petition for relief on September 26, 2010 (Doc. No. 1) to prevent Inervest from finalizing its levy on the Debtor's only assets of any value: its membership interests in the "middle tier LLCs."

3.      The Debtor filed its original Schedules and Statement of Financial Affairs on October 11, 2010 (Doc. No. 18) listing itself as the owner of certain LLCs, none of which the Debtor actually owns.

4.      After Inervest raised the erroneous Schedules in its pleadings, the Debtor filed an Amended Schedule B on November 2, 2010 (Doc. No. 55), listing its ownership of the correct LLCs.

5.      The Debtor has filed DIP reports for September and October 2010 (Doc. Nos. 30, 83).  These DIP reports show that the Debtor has no income or expenses.

6.      The Debtor has no employees (SFA, Case Management Summary and testimony of Stefan Davis at §341 meeting on Nov. 3, 2010).

7.    The Debtor owns one piece of vacant land in Mississippi that it scheduled as having a "current value" of $87,975.00 subject to a mortgage of Wells Fargo in the amount of $5,770,006.93 (Schedules B and D).[1]

8.    The Debtor is a holding company. Its only other asset (aside from vacant land in Mississippi with no equity for this Estate) consists of membership interests in certain LLC subsidiaries (the "Middle Tier" LLCs) (Sch. B, SFA, Case Management Summary (Doc. No. #32) and Debtor's *Emergency Motion for an Order approving Sale of Assets Free and Clear of all Liens, Claims and Encumbrances* (Doc. No. 88).

9.    The Debtor does not do business of any kind – it is a "holding company." (Debtor's Case Management Summary).   Although the Debtor alleges that it was "created to hold, develop, and sell condominium development properties in Mississippi and Louisiana" the Debtor no longer owns any real property other than the vacant lot next to the 21-story tower at Beau View, in Biloxi, Mississippi.  There is no equity in this property:  it is subject to mortgages in favor of Wells Fargo and Inervest. Further, the real property taxes on this land are three years in arrears (2008, 2009 and 2010).

10.    The Debtor's Schedules, Statement of Financial Affairs and other pleadings are rife with untruths, errors and inconsistencies:

    a.  Inervest's claim is listed as "disputed," although the time to appeal Inervest's judgment has clearly expired, so there can no longer be any legitimate legal dispute about Inervest's claim.

    b.  Inervest's mortgage on the vacant parcel owned by the Debtor is not scheduled.

---

[1] Inervest has a second mortgage behind the Wells Fargo mortgage on the same property in Mississippi.  The Debtor did not list Inervest's mortgage anywhere in its Schedules or Statement of Financial Affairs.

c.  The real estate tax claim of the Harrison County tax collector is listed as unsecured on Schedule E, but in fact it is a claim secured by a first priority lien on the Mississippi real property.

d.  The only unsecured non-insider claim against the Debtor (aside from claims of SunTrust Bank and Wells Fargo, discussed below) is held by a law firm named "Dell Graham" and is for $1,322.10 – apparently for prepetition legal services related to this case which were not properly disclosed as such.

e.  The Wells Fargo claim is secured by a mortgage on the vacant Mississippi land and by the remaining 39 luxury condominium units at Beau View of Biloxi, a 21-story tower in Mississippi owned by a bankruptcy remote (i.e. "Lower Tier") LLC, Beau View of Biloxi, LLC.

f.  The SunTrust claim is secured by two parcels of vacant land, also owned by bankruptcy remote entities and not by the Debtor. The Debtor is not the obligor. Although the Debtor does not list the values of these properties in its Schedules, the Debtor alleges that it has a contract to sell the Baleen property for $1.5 million. There is no evidence before this Court that the value of the Biscayne property is less than the remaining SunTrust debt or that any hypothetical deficiency is not secured by other assets owned by insiders.

g.  In answer to the question of whether there are any co-debtors liable on any of the scheduled debt, the Debtor checked the box that says, "Debtor has no co-debtors." It is clear from the Schedules, however, that this is simply not true.[2] By the Debtor's own admission, the SunTrust claim is secured by property owned by two

---

[2] This fact will be more abundantly true if we go beyond the pleadings and present the relevant evidence.

non-debtors, whereas the Wells Fargo claim is secured by property owned by a bankrutpcy-remote LLC that is also liable for the debt.

h.  In answer to question 18b of the Statement of Financial Affairs, the Debtor states that none of the LLCs listed are single asset real estate entities.  This is patently not true.  In fact, **all** of the LLCs are single asset entities.  The only assets of the "Middle Tier" LLCs are the membership interests in the bankruptcy remote LLCs.  The only assets of the bankruptcy remote LLCs are single parcels of real estate.

i.  The Debtor reports $0.00 income during 2010, 2009 and 2008 in Question 1 of the SOFA.  The Debtor's income tax returns and bank accounts, however, show that the Debtor had literally millions and millions of dollars reported as income, and millions and millions of dollars flowing into and out of its bank accounts during that period of time.[3]

j.  Stefan Davis, the Debtor's Managing Member and a guarantor of the Wells Fargo and SunTrust debts, testified at the 341 meeting that the Debtor did not have any sales of property pending.[4]  The Debtor has now filed its Emergency Motion to Sell Property, attached to which is a contract that Mr. Davis signed in _August_ of 2010, more than three months prior to his giving this testimony.

k.  The Debtor's schedules disclose no information about the property owned by the bankrtupcy remote LLCs, or those entities' income and expenses.  Similarly, the Debtor has resisted producing information about the bankruptcy remote entities, initially objecting that the Debtor lacked "possession, custody, and control" of

---

[3] The Debtor discloses only one bank account, but its own bank statements indicate that it had, and likely still has, at least two and possible more.

[4] As the Court no doubt recalls, this assertion was repeated in open court by Debtor's counsel at the preliminary hearing on Inervest's Emergency Motion for Relief from Stay that took place on November 2, 2010.

information related to the bankruptcy remote entities, and requiring Inervest to separately subpoena each and every entity to obtain any documents. The Debtor has failed to respond to, or has objected to, all of Inervest's interrogatory requests and requests for admissions related to the bankrtupcy remote entities and their assets.   Nonetheless, the Debtor's proposed Chapter 11 plan is based upon the very properties that the Debtor has not listed and about which the Debtor has refused to answer questions or readily produce any information.

l.  The value of the only asset (the Middle Tier LLCs) of value is scheduled at $718,572.55, notwithstanding that two of these LLCs own real property free and clear of liens and encumbrances (other than real estate taxes) and that these two properties alone are worth, according to Stefan Davis, $5,000,000.00 and $2,500,000.00, respectively.[5] (Debtor's Schedule B, 14).

m.  Finally, in response to Question 23 on the SOFA, the Debtor stated that it did not make any transfers to insiders during the last two years.   However, the Debtor's bank statements and canceled checks show any number of transfers to insiders during the period of December 2007 through August 2010, when transfers and income abruptly stopped just prior to the Debtor filing this case.[6]

When viewed in their totality, the pleadings filed by the insiders for the Debtor prove that the insiders filed this case for three purposes only:  (1) to shield the insider guarantors and

---

[5] Testimony of Stefan Davis at deposition in aid of execution on June 10, 2010; see Inervest Stay Relief Motion, paragraphs 10-12.  Even though Mr. Davis testified to these values in June of this year, he now says that he does not know what these properties are currently worth.  The Debtor's Case Management Statement indicates, contrary to the Schedule B, that the assets should have a net value of approximately $2.5 million.

[6] Stefan Davis testified at the 341 meeting that none of the lower tier LLCs had their own bank accounts until just prior to filing this case for the Debtor, and after they had met with the Debtor's counsel, Scott Shuker, for the first time.

their assets from further liablity to Wells Fargo and SunTrust; (2) to use this Court as a vehicle for undoing an injunction granted by a state court of competent jurisdiction; (3) and to shift assets subject to Invervest's judgment lien to the guarantors' creditors:  Wells Fargo and SunTrust Bank.  In order to benefit the insiders, the Debtor's principals are gaming the bankruptcy system by picking and choosing what portions of the Bankruptcy Code they want to use to their advantage in this case.  For example:

A.    The guarantors assert, and Inervest can't disagree, that §362(a)(1) stays Inervests attempts to collect the debt owed to it by the Debtor.[7]  At the same time, the guarantors have allowed SunTrust to file and pursue a post-petition mortgage foreclosure action against them and the Debtor in state court, and have permitted SunTrust to take defaults against all named defendants.[8]  This foreclosure will destroy the value of two bankruptcy-remote entities:  "Davis Heritage – Baleen, LLC" and "Davis Heritage – Biscayne, LLC," and in turn, the balance-sheet value of the membership interests held by the Debtor.  Those entities are single asset real estate entities, and the single asset of each – the real property – is being foreclosed by SunTrust.

---

[7] *See, In re Saunders,* 101 B.R. 303, at 305 (Bankr. N. D. Fla. 1989).

[8] Inervest asks this Court to take judicial notice of the fact that SunTrust Bank has filed (post-petition) a mortgage foreclosure complaint against the Debtor and others seeking to foreclose its mortgage on the property owned by bankruptcy-remote entity, Davis Heritage of Baleen, LLC, and that SunTrust has (again post-petition) obtained defaults against the defendants in that lawsuit.  Only when *Inervest* filed a suggestion of bankruptcy did SunTrust move to set aside the default *as to the Debtor*. See copy of court docket in Case No. 10CA5057 pending in the circuit court in and for Okaloosa County, Florida.

B.  The guarantors filed Schedules for the Debtor that list no real property other than a vacant lot in Mississippi.  Nonetheless, the Debtor has filed an emergency motion[9] for 363(b) authority to sell a parcel of real property that it does not own, and that is not listed on its Schedules.  In that motion, among other things the Debtor is asking this Court to set aside the injunction entered by the Alachua County Circuit Court as to the bankruptcy-remote entity and its real property.  This is the same real property on which the guarantors are allowing SunTrust to foreclose.

C.  The guarantors maintain that Wells Fargo and SunTrust bank have unsecured claims against this Debtor and this Estate, but they simultaneously maintain that and act as though neither Wells Fargo nor SunTrust is affected by the automatic stay.  The guarantors have continued renegotiating the Wells Fargo and SunTrust loans both pre- and post-petition.  The Wells Fargo loan is not delinquent and the SunTrust loan did not become delinquent until just before the guarantors filed this case for the Debtor.

By filing this case for the Debtor, the insider/guarantors have invoked the automatic stay as to Inervest only.  The insider/guarantors, and therefore the Debtor, are allowing SunTrust, Wells Fargo, various tax collectors and perhaps myriad others to proceed as though there were no automatic stay.  By failing to disclose any of the assets owned by the bankrtuptcy remote entities, and by not disclosing the creditors of those entities, the insiders/guarantors have ensured that they can continue to operate those entities with impunity during the pendency of this case. They have not reported any income, expenses, insider transfers, assets or liabilities of the

---

[9] The Debtor filed this as an Emergency Motion even though the Debtor's principals signed the contract to sell this property in August, and even though this case has been pending since the Debtor filed its petition for relief on September 26, 2010.

bankruptcy remote entities, nor accurately reported those regarding the Debtor, nor are they attempting to invoke the automatic stay as to creditors of those entitites.

## MEMORANDUM OF LAW

In determining whether a case was filed or the debtor and its attorneys are proceeding in bad faith, the court may consider not only the initial petition but all subsequent pleadings filed in the case. *See, In re Lorraine Guardian, Ltd.,* 104 B.R. 435 (Bankr. N. D. Fla. 1989); *In re McBride Estates, Ltd.,* 154 B.R. 339, 342 (Bankr. N.D. Fla. 1993). In determining whether the debtor and its lawyers should be sanctioned under Rule 9011 for fioling a petition in bad faith, this Court in *McBride* applied the *Phoenix Picadilly* factors. *Id. In re Phoenix Picadilly,* 849 F.2d 1393 (11th Cir. 1986). The same analysis in the instant case shows that this Court should reach the same conclusion that it did in *McBride,* which is that the Debtor (through its principal/guarantors) filed this case in bad faith.

In *McBride,* as here, the debtor had only one major creditor. Its only unsecured creditor was a corporation, the principal of which was a limited partner of the debtor. *McBride,* at 342-43. Here, the only real creditor of the debtor is Inervest, which holds a judgment lien on the Debtor's only asset, its membership interests in other LLCS. The only non-insider unsecured claim listed is in the amount of $1322 and is held by a law firm with which the Debtor consulted pre-petition to "deal with" the Inervest issue.[10] In the instant action, Davis has attempted to create unsecured claims by maintaining that Wells Fargo and SunTrust are entitled to have unsecured status by virtue of the Debtor's guarantys of the Wells Fargo and SunTrust claims. To date, however, the Wells Fargo claim is not in default and appears to be over-collateralized with

---

[10] It is possible that this claim has already been paid; the Debtor has agreed to check its records and those of its affiliates and provide that information.

other assets and the SunTrust claim is also over-collateralized and fully secured by mortgages on assets owned by the bankruptcy remote LLCS.

In *McBride,* as here, the debtor did not have any income, any expenses or any employees. *Id.* The debtor in *McBride* owned only one asset (vacant lots encumbered by mortgages) and its financial troubles involved a dispute solely between the debtor and the secured creditor, which "could adequately be resolved in the pending state court action." *Id. at 343.*

In *McBride* the debtor filed its Chapter 11 petition within two hours of the scheduled foreclosure sale of its assets. *Id.* Here, Davis filed its Chapter 11 petition just prior to Inervest's completion of a Sheriff's levy on its only asset – its interests in the "Middle Tier" LLCS.

In the instant action, Inervest obtained a Final Judgment against the debtor, Davis, in the state court in Mississippi, and the time to appeal that judgment is long gone. In spite of that, Davis and its attorneys listed Inervest's judgment debt as "disputed" on its Schedule D. The debtor in *McBride* and its attorneys did the same thing – they listed the foreclosing creditor's debt as "unliquidated," despite the fact that the creditor's claim had been reduced to judgment pre-petition. *McBride* at 343. In that issue, this Court stated:

> (f) McBride's timing of its filing of the Chapter 11 petition just two hours prior to the foreclosuree sale evidences an intent to delay or frustrate Barnett's efforts to secure its rights in the state court. Additionally, in its schedules, McBride inaccurately listed Barnett's debt as unliquidated in spite of the fact that McBride and its counsel knew that the Final Judgment in Foreclosure had been entered which fixed and liquidated the debt. *This inaccurate listing of Barnett's debt is further evidence of the intent on behalf of the debtor to cause needless litigation expense to Barnett. (Emphasis added.)*

In *McBride,* this Court found that the debtor had no source of income other than from the sale of lots. In this case, Davis has no source of income at all.[11] In *McBride,* this Court ruled that the Chapter 11 was filed for an improper purpose and that its filing – and the Debtor's

---

[11] Davis has had many, many millions of dollars flow through its bank account, but it reports no income and no source of income currently.

opposition to the creditor's motion for relief from stay – were not "well grounded in fact or warranted by existing law, …" and dismissed the case and awarded sanctions against the debtor and its lawyer. *In re McBride,* 154 B.R. at 343.

This case not only has all of the *McBride* and *Phoenix Picadilly* factors, it has one additional factor: this Debtor does not own anything that it can reorganize. The Debtor owns one parcel of vacant land in Mississippi that is fully encumbered. The only other 541 property of this estate is the Debtor's ownership interests in the "Middle Tier" LLCS; the only assets of the Middle Tier LLCS is their interests in the Bankruptcy Remote LLCS; and the real property owned by the Bankruptcy Remote LLCS is not 541 property of this estate. *In re Brittain,* 318 B.R. 318 (Bankr. S.C. 2010).

In this case, the Debtor's insider/guarantors say that the economy triggered their filing of this Chapter 11 case. These assertions are, quite simply, unbelievable. The truth is that this debtor and its insider/guarantors all but ignored Inervest until Inervest levied on the Debtor's interests in the Middle Tier LLCS and in response to a ruling by the Supreme Court of Florida.

On June 24, 2010 the Florida Supreme Court ruled for the first time that a judgment creditor [Inervest] is entitled to an order forcing a judgment debtor [Davis] to surrender all right, title and interest in the debtor's single-member LLCs [the Middle Tier LLCS.] *Olmstead v. F.T.C.,* 44 So.3d 76 (Fla. 2010), in response to a certified question from the Eleventh Circuit Court of Appeals, *F.T.C. v. Olmstead*, 528 F.3d 1310 (11th Cir. 2008). Before *Olmstead,* if a Florida judgment creditor levied on a debtor's ownership in single member LLCS, the most the judgment creditor could get was a statutory charging order, which only entitled the judgment creditor to the judgment debtor's "rights to profits and distributions from the business entity in which the debtor has an ownership interest." *Olmstead v. F.T.C.,* 44 So.3d 76 at 79. In this case,

that result would have been a non-issue as between Inervest and Davis because Davis was not receiving any "profits or distributions" from the Middle Tier, single member LLCS.[12]   Further, even the Lower Tier/bankruptcy remote LLCS did not produce any income subject to a charging order because the majority of them own only vacant land.[13]

After and as a result of the *Olmstead* case, Inervest became entitled to have Davis turn over to it all of Davis' "right, title and interest" in and to all of the Middle Tier LLCS, which would then have resulted in Davis losing control.  This was, obviously, an outcome clearly not to Davis' liking.  Davis, therefore, responded by filing the petition commencing this case.

This Court has distinguished cases like this one from a case where the debtor has a significant chance at reorganization and assets with which to fund a plan.  In  *In re Deb-Lyn, Inc.*, 2004 WL 452560 (N. D. Fla. 2004), this Court denied a creditor's motion for relief from stay for cause even after the debtor had signed a loan workout agreement in which it had waived protection of the automatic stay.  The Court based its ruling primarily on the fact that the debtor in *Deb-Lyn* was not a single asset real estate debtor, had over 200 employees, several Burger King restaurants and "four separate secured creditors, and at least 103 general unsecured creditors." *Id. at p. 4.*

This court has dismissed other chapter 11 cases as bad faith filings, including one in which the debtor filed its plan the day prior to the hearing in an attempt to show its good faith in

---

[12] This statement is not entirely accurate based upon the Debtor's bank statements, which show a tremendous amount of money going through the Debtor's account durinig the two years pre-petition.  Upon information and belief, however, Davis will claim that it was not entitled to this money, but that the money just flowed through its account for convenience.

[13] This assertion may not be true as to the Debtor's interest in Davis-Heritage Stratford Mill, LLC, because it appears that entity's real property produces significant cash to its members.  Inervest has still not been successful in determining the amount of cash because of the Debtor's objections to just about every attempt by Inervest at discovering into these issues.

attempting to "reorganize."[14]  *In re Lorraine Guardian, LTD,* 104 B.R. 435 (Bankr. N.D. Fla.

1989).  In *Lorraine Guardian,* as here, the debtor had no ongoing business, no employees, one

asset and no realistic prospect for reorganization.  The court found that even if the debtor's plan

could go to confirmation, confirmation would be impossible over the vote of the objecting

creditor.  *Id.* at 438.  In the instant action, even if the debtor files a plan just prior to the hearing,

as the Eleventh Circuit Court said in *Phoenix Picadilly,* "the possibility of a successful

reorganization cannot transform a bad faith filing into one undertaken in good faith."  849 F.2d at

1395.

 Other courts in Florida have dismissed cases with facts similar to those at bar in this case.

In *Singer Furniture Acquisition Corp. v. SSMC Inc.,* 254 B.R. 46 (M. D. Fla. 2000), the debtor appealed

the bankruptcy court's dismissal of the Chapter 11 case as a bad faith filing.  The district court

upheld the dismissal.  In *Singer,* the debtor filed a chapter 11 petition 13 days before a trial was set

to begin against it in Virginia.  The creditor had filed a civil action against the debtor in Virginia for

various causes of action including a fraudulent scheme to circumvent the creditor's security

interest in Singer Furniture Group.  Judge Paskay held that the chapter 11 petition was filed in bad

faith using the Picadilly factors and his decision was upheld by the district court.

 *Singer* is similar to the instant case in that Singer was a holding company not engaged in any

business and that had no employees.  Also, Singer had more than enough assets available to pay its

other two reported creditors.  In *Singer,* as in this case, the debtor's financial problems and legal

disputes were only with the creditor who moved for dismissal, SSMC.  It is also similar because

Singer filed on the eve of trial in Virginia.  The district court in *Singer* stated that "[C]ourts have

recognized factors which show an 'intent to abuse the judicial process and the purposes of the

reorganization provisions' [when] the petition was filed strictly to circumvent pending litigation...."

---

[14] The Debtor's attorneys in this case have filed an exhibit list for tomorrow's hearing that contains only two
exhibits, one of which is a Chapter 11 plan that has yet to be filed.

citing *In re Dixie Broad. Inc.,* 871 F.2d 1023, 1026-27 (11th Cir.1989). *Singer* is also similar to the instant case because, as the district court stated, "there is no real possibility of reorganization because Singer, by its own documents, had nothing to reorganize.  Singer reported no taxes, no accounts receivable, no accounts, no inventory, no bank account, no officer's compensation and no insurance in place."  254 B.R. at 52.

In *In re RAD Properties, Inc.,* 84 B.R. 827 at 830 (Bankr. M.D. Fla. 1989) the bankruptcy court for the Middle District of Florida recited the *Phoenix Picadilly* factors in considering whether to dismiss a single asset real estate case for bad faith.  There, the court stated:

> The factors cited above generally fall within three basic categories: (1) whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized consistent with the congressional intent and protection afforded by Chapter 11; (2) whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and (3) whether the debtor has a realistic probability of successful reorganization.

In ruling that the case was filed in bad faith, giving cause for lifting the stay, the bankruptcy court in *RAD* focused on the following facts, all of which are present here:  the debtor was a one asset estate with very few creditors who would benefit from reorganization; all of the unsecured debt was owed to insiders or companies controlled by insiders of the debtor; the debtor was solely owned and controlled by one individual, with no other employees; and the debtor had no cash flow to sustain a plan of reorganization.  *Id.*

The good faith inquiry applies with equal force to liquidation plans as to reorganization plans.  The potential for bad faith is not reduced simply because ownership is not allowed to retain an interest in the reorganized entity.  The good faith requirement of the Code is necessitated as much by the hardship of Chapter 11 to certain interests as it is by the benefit to others.  *In re SGL Carbon Group*, 200 F.3d at 161-62, 165-66 (3d Cir. 1999).

The facts of this case demonstrate the essential nature of the bad faith inquiry: who is going to benefit from any attempt at reorganization? In the instant action, only the insider/guarantors. There is nothing here to reorganize. This debtor is unquestionably "out of business," and therefore has no going concern value to preserve in Chapter 11 through reorganization or liquidation under the Bankruptcy Code.

This case goes a step further than the traditional single asset bad faith cases, in that here the real assets are not 541 property of the estate, are not subject to this Court's jurisdiction and the creditors with claims to those assets are not stayed under 362. The value of this debtor's only asset – the memberships in the Middle Tier LLCs – is decreasing every day that this case languishes in chapter 11.

## CONCLUSION

The Debtor is only a shell – devoid of business, income, employees and any ability to reorganize. There are only three non-insider "creditors" of the Debtor – Inervest, Wells Fargo and SunTrust. Wells Fargo and SunTrust are recourse creditors who have guarantys from Stefan Davis, Norita Davis, Davis Heritage, Ltd., Earthart, Inc., and possibly others. Wells Fargo has mortgages on properties in Okaloosa and Alachua Counties to further secure its debts; SunTrust may have additional mortgages as well. Based on Stefan Davis' prior testimony and on appraisals, SunTrust's and Wells Fargo's claims are over-secured. Inervest is the only non-insider creditor that has no guarantors for its debt and does not have security for its claim, other than a second mortgage on vacant land in Mississippi on which Wells Fargo holds a first mortgage of $5.5 million. The Wells Fargo debt is not even in default.

Inervest was on the verge of levying on the Debtor's ownership in LLCs, which would have permitted Inervest to collect on the assets of the bankruptcy-remote entities and their

properties.   Inervest has obtained a state court injunction preventing the bankruptcy remote entites from voluntarily further transferring their properties.   Having been unsuccessful fighting that injunction, the insider/guarantors come to this Court as a way to try to frustrate the injunction that they could not undo in state court.   They filed the Debtor's bankruptcy petition for one reason only – to use as a sword pointed at Inervest's throat to stop Inervest's collection efforts; and to use as a shield of the insider/guarantors to protect them and their personal assets.

The goal of the insider/guarantors in this case is simple, albeit obfuscated by the complexities of their corporate structures.   By filing this case, they intend to use this Court to defeat a state court injunction, and as a way to invite Wells Fargo and SunTrust to Inervest's table, to feast on the only assets available to pay Inervest's claim, for the benefit of no one but themselves.   This is not a proper purpose for Chapter 11.   This case is being used by the insider/guarantors for their own benefit, and not for the benefit of any other party, most particularly the Debtor.

This case is perhaps most notable for what is missing.   There is no schedule of assets, liabilities, income or expenses of anyone but the Debtor – a shell.   There is no disclosure of officer or shareholder compensation, no indication of willingness to investigate or pursue preferential or fraudulent transfers (other than against Inervest), and no effort to hold creditors at bay – other than Inervest.    In essence, this case is <u>truly</u> a two-party dispute. The insider/guarantors have manufactured creditors in order to obfuscate that fact and achieve their own personal goals.

There is no good faith here.  The Debtor's Schedules and SOFA are false and misleading. The Debtor, through its insiders, is attempting to pick and choose which assets to use to pay which creditors, and which portions of the bankrtupcy code it wishes to take advantage of at any

particular time.  For the most current example, the Debtor attempts to use 363(b) to sell property that it does not even own, that has not been disclosed to the Court, and is currently enjoined from disposition.

The Debtor did not file this case in good faith. The Debtor is not proceeding with this case in good faith.  This case involves truly only a two party dispute that does not belong before this Court.  This Court should abstain from hearing this case or, in the alternative should dismiss this case or give Inervest relief from the stay.

In the event that this Court should deny Inervest's other motions, then it should appoint a Trustee or Examiner with expanded powers to take possession and control away from the insider/guarantors for the benefit of the only real creditor in this case, Inervest, and the other two non-insider creditors, Wells Fargo and SunTrust.

Respectfully submitted this 7th day of December, 2010.

**CHILDERS**LAW

Sixth Street Executive Center
1330 NW Sixth Street, Suite C
Gainesville, Florida 32601
*tel* 866.996.6104
*fax* 407.209.3870
*net* jchilders@smartbizlaw.com

*/s/ Seldon J. Childers, Esq*
Florida Bar No. 61112

SPECIE LAW FIRM, LLC
P. O. Box 358318
Gainesville, FL 32635-8318
352-317-7699
877-887-9642
karen@specielaw.com

*/s/ Karen K. Specie, Esq.*
Florida Bar No. 260746

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 7, 2010, a true and correct copy of the foregoing has been filed with the Court and furnished by CM/ECF notice to the Debtor's attorney, the office of the United States Trustee, and all counsel of record.  In addition, a copy was sent to the Debtor via regular U.S. Mail at the address on file with the Clerk:   DAVIS HERITAGE GP HOLDINGS, LLC, 20725 S.W. 46th Avenue, Newberry, FL  32669.

*/s/Seldon J. Childers, Esq.*